Wood v. Black.

---

No. 9400.

## WOOD v. BLACK.

GUARDIAN AND WARD.—*Inventory.*—*Removal.*—The statute, R. S. 1881, section 2521, is imperative, that a guardian who fails to file an inventory as required shall be removed, and this, in case of resignation, applies to the successor.

SAME.—*Accounts.*—*General Duties.*—A guardian of several wards having an estate in common must keep separate accounts with each, and if he fails in this because he is too ignorant, he should be removed; so, also, if he manages the estate of his wards for his own benefit instead of theirs.

From the Porter Circuit Court.

*E. D. Crumpacker*, for appellant.

*W. Johnston* and *T. J. McLaughlin*, for appellee.

MORRIS, C.—The appellant filed a petition on behalf of Rebecca Massam, an insane person, stating that the said Rebecca, her sister Mary Ann Massam, and her brother Philip Massam, all of whom had been adjudged insane and unfit to manage their estates and business, were in 1871, and still are, the owners of a farm in said county of Porter, consisting of 296 acres; that the appellee, Black, had been, in 1871, ap-

pointed guardian of said insane persons, and asking for his removal from the guardianship of the said Rebecca, for the following reasons:

1st. Because he had neglected to file an inventory of the real and personal estate of his wards as required by law.

2d. Because the said Black is wholly and absolutely unfit and incompetent to perform the duties of his trust; that he can neither read nor write, nor keep any account of the transaction of his wards' business; that, because of his incompetence, said wards have been defrauded out of considerable sums of money.

3d. Because the said guardian does not keep separate accounts of the income of each of his said wards' estate; that Rebecca is self-supporting, and that the guardian has applied the income of her estate to the support of his other wards; that Rebecca has received no money from said guardian during the last ten years; that if the accounts had been properly kept by the appellee as such guardian, there would now be shown to be in his hands $1,000.

4th. Because said guardian has received and applied to his own use large portions of the income of the estate; that he has used the pasture lands of his wards for his own benefit, without charging himself therefor.

5th. Because said guardian has corruptly and fraudulently managed the estate of his wards; that he and one Darby, to whom he had leased the real estate of said wards for $250 per year, when it was worth $500, had colluded together, and the guardian had paid him extravagant sums for improvements made on the farm of said wards.

6th. That said guardian had removed said Rebecca, against her will, to the State of Nebraska and failed to provide in any way for her support. The petition states that the petitioner is a householder and freeholder of Porter county, and prays that Black may be removed from the guardianship of Rebecca.

The appellee appeared and answered the petition in four paragraphs, the first being a general denial.

The second paragraph of the answer, which is limited to the first ground alleged for the removal of Black as such guardian, states that, prior to his appointment as such guardian, one John Crumpacker was acting as the guardian of his wards, and had filed a complete inventory of their estate ; that he resigned his trust, and thereupon he, the appellee, was appointed guardian, etc. ; that the assets, which consisted of land only and the money paid into court by the former guardian, were handed over to him ; that the amount of money was $———.

The fourth paragraph applied to the sixth cause of removal stated in the complaint, and alleged that Rebecca went to Nebraska with a family with whom she had lived for some time, who treated her kindly, at a charge of $10 per year; that the appellee had duly cared for her, and was willing to bring her back if the court should direct him to do so.

The appellant demurred to the second, third and fourth paragraphs of the answer. The demurrers to the second and fourth were overruled, and sustained to the third.

The appellant replied in denial of the second and fourth paragraphs of the answer. At this point in the proceedings the appellee, upon leave of the court, filed an inventory of the estate of his wards.

The cause was submitted to the court. Finding for the appellee. The appellant moved for a new trial, which was overruled, and judgment rendered for the appellee for costs.

The errors assigned question the rulings of the court upon the demurrers and the motion for a new trial.

By section 8 of the act of 1852, in relation to insane persons, it is provided that " The same duties are required of, and the same powers granted to, guardians of persons of unsound mind as are required of, and granted to guardians of minors, so far as the same may be applicable." 2 R. S. 1876, p. 600, sec. 8.

By the first clause of the ninth section of the act in relation to guardians of minors, it is provided as follows :

" It shall be the duty of every guardian of any minor :

"*First.* To make out and file within three months after his

appointment, a full inventory, verified by oath, of the real and personal estate of his ward, with the value of the same, and the value of the yearly rent of the real estate ; and failing so to do, it shall be the duty of the proper court to remove him, and appoint a successor." 2 R. S. 1876, p. 589.

This provision of the statute applies to guardians of insane persons. It was enacted for the benefit and protection of the ward. If an inventory is filed, stating the real and personal estate of the ward, and the yearly income of the real estate, the responsibility of the guardian is, to some extent at least, fixed, and the evidence of his liability permanently secured. The duty imposed by the* statute is reasonable, intended to protect those who are unable to protect themselves, and the statute wisely declares that the guardian who neglects to perform it shall be removed from his trust. The words of the statute seem to make it the imperative duty of the court to remove a guardian who neglects to file an inventory as required.

The second paragraph of the appellee's answer admits that he had failed for many years to make the required inventory, but says that a former guardian had, in this respect, performed his duty ; that such former guardian had filed a complete inventory of the real and personal estate of his wards ; that he had resigned, and that the estate of the appellee's wards consisted of real estate only, and some money paid into court by his predecessor in said trust. It is not easy to see how the fact that the former guardian had discharged his duty could excuse the appellee from the performance of his duty. It was just as necessary that the appellee should file an inventory of the estate of his wards as that his predecessor should have done so. The purpose for which the inventory is required is to show the condition and value of the estate, the management of which the guardian has assumed. The estate inventoried by his predecessor would not show the estate which came into the hands of the appellee as guardian. We think it was as much the appellee's duty to file an

inventory as it would have been had there been no previous guardian. It is, by the words of the statute, made the duty of every guardian to file an inventory within three months after his appointment. In the case of *Markel* v. *Phillips*, 5 Ind. 510, it was held that a failure to file an inventory, as required by the statute, could not be justified on the ground that, through an honest misapprehension as to the law that was in force, the duty had been neglected.

Counsel for the appellee refer us to the cases of *Gregg* v. *Wilson*, 24 Ind. 227; *Young* v. *Young*, 5 Ind. 513; *Barnes* v. *Powers*, 12 Ind. 341; *Nettleton* v. *State*, 13 Ind. 159.

In the first of these cases the guardian had been removed for not filing an inventory, and this court refused to disturb the action of the court below. True, the court says that matters of the kind must be left largely to the discretion of the court having original jurisdiction.

In the case in 12 Ind. the guardian was removed. An inventory had been filed before the proceedings were commenced, though not within the time required by the statute. It was claimed that the subsequent filing of the inventory excused the original neglect. This the court did not decide. There is no such question raised by the second paragraph of the answer in this case. *Nettleton* v. *State* relates to another question. In the case of *Gregg* v. *Wilson*, *supra*, which was an application to remove an administrator for failing to file an inventory, the court simply holds that the evidence did not sustain the charge. No sufficient excuse for failing to file an inventory is alleged in the answer. If any existed it should have been stated.

We think the court erred in overruling the demurrer to the second paragraph of the answer.

The appellee testified as follows: " I am the guardian of Rebecca, Mary Ann and Philip Massam, and have been since 1871. The wards are all over fifty years old; they are idiots, I think; they own a farm of 296 acres; 100 acres under cultivation, and the residue is marsh, suitable for pasture and hay;

there is a very good house and barn on the farm; I do not keep separate accounts between the wards, but used the proceeds of the farm for the support of the wards generally; I never went to school; don't write much; write my name sometimes; I have been paying $10 per year for the support of Rebecca; $20 for Philip and $60 for Mary Ann; I rented the farm to Wallace Darby from 1873 to 1879, for $250 per year; I entered into a written contract with Darby; I don't know where the contract is; Darby kept my accounts with wards for me until he moved away; before I rented him the wards' land he had lived with me as a member of my family; I think I rented the farm to Darby for all it was worth; I was offered $300; I don't know but it was $375 per year for it, but I didn't consider the man's word good; would rather have $100 than his word for $300; I did not ask him whether he could give bond; I don't know how much I paid Darby for repairs on farm; he built about 360 rods of fence; I furnished the material; the building was worth thirty cents per rod; he broke about sixty acres, for which I paid $2 per acre; did the breaking two years; he lived on farm for six years; I did not agree in the contract to do any breaking; I did not receive any more rent on account of the breaking; I had it done to improve the place; I have pastured on the farm almost every year; I have never kept any account of it; the marsh was not fenced when I took it, and before Darby rented it he and I fenced the marsh for our own convenience; I never charged the wards anything for this fence; then I rented the farm to Darby for cash rent, and I pastured some with him; I am now renting the farm for a share of the grain; I am farming some of it myself; I am pasturing on the place, and my son has some stock on it; one of the neighbors has a colt on it; I paid Darby for pasturing while he rented the farm; my son keeps my accounts for me; when I took the trust I got $300 from the clerk; I have no money on hand belonging to the wards; I have about 300 bushels of corn which is all their personal estate; I don't know just

what share of the proceeds of the estate each ward is entitled to." He then states that Rebecca went with a Mr. Carr to Nebraska; that she had been living with Carr, was treated kindly by the family, and was much attached to them; that Carr agreed to keep her for $10 per year, which sum he has paid; that he has not seen her for six years.

Upon this statement by the appellee, as to the manner in which he has discharged his trust, we think he should have been removed, and some one appointed in his stead who can keep the accounts of the wards distinct and separate, and who will be disposed to manage the estate, not for his own convenience, but exclusively for the benefit of those unfortunate persons whom the guardian thinks to be idiots.

It is obvious, from the testimony of the appellee, that injustice has been done Rebecca; that she has not received her share of the income of the estate; nor is it now in the hands of the guardian. He has paid her but $10 a year, while he has paid out for Philip $20, and for Mary Ann about $60. He says he kept no separate account of the income, but has applied it to the support of the wards generally. This he had no right to do. It was his duty to keep the account of each separately. The judgment below should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellee.